Clark v. Moore

Judges MORRIS and PARKER concur.

---

ALFRED JUDGE CLARK v. LUCY SULLIVAN MOORE

No. 7520SC648

(Filed 17 December 1975)

Automobiles § 54— passing motorcyclist traveling in same direction — automobile driver not negligent

In an action for personal injury arising from an automobile-motorcycle collision, evidence was sufficient to support the trial court's findings and conclusion that there was no actionable negligence on defendant's part where the evidence tended to show that defendant in her automobile came up behind plaintiff on his motorcycle, defendant slowed down and followed plaintiff at a very slow speed for approximately 150 feet, with no traffic approaching from the opposite direction defendant sounded her horn, crossed the centerline of the highway to her left and attempted to pass plaintiff, and plaintiff turned his motorcycle left into defendant's car while defendant was passing him.

---

Clark v. Moore

---

APPEAL by plaintiff from *Long, Judge*. Judgment entered 2 April 1975 in Superior Court, ANSON County. Heard in the Court of Appeals 10 November 1975.

This litigation arose out of an automobile-motorcycle collision on 4 April 1971. In his complaint, plaintiff motorcyclist alleged that defendant, driving her automobile at an excessive rate of speed, " . . . failed to yield the right of way to the plaintiff in accordance with his [i.e. plaintiff's] left turn signal . . . [and] [d]efendant failed to keep a proper lookout and decrease her speed in order to avoid colliding with the motorcycle of the plaintiff. . . . As a result thereof, the plaintiff had his left leg broken in several places and suffered permanent injuries to his left leg. . . . " Plaintiff also raised the issue of damage to his motorcycle and sought damages for both his personal injuries and property damage.

Defendant's answer, denying the material allegations raised in plaintiff's complaint, averred that while travelling behind the slow-moving plaintiff, she decided to pass and only made her move into the left lane after sounding her horn and thus warning the plaintiff. While passing, " . . . the plaintiff suddenly and without [signalling any] warning [to the defendant] turned his motorcycle to his left across the center of the highway and ran the same side into the right side and front fender . . . " of her car. Defendant further maintained upon information and belief that immediately preceding the collision the plaintiff suddenly attempted " . . . to make a U-turn in the highway. . . . "

At trial, plaintiff testified that he had been travelling along the southbound lane with two other cyclists and turned back by himself to retrieve a face shield that he had seen lying along the roadbed. The two other cyclists remained behind to wait for plaintiff's return. Plaintiff stated that:

> "When I pulled out in 52 headed north I did not see any approaching vehicles. After I pulled out I saw a vehicle approaching me from the rear after I had gone about 50 feet. I later determined who the operator and owner of that automobile was. It was Mrs. Lucy Sullivan Moore. The defendant in this lawsuit. I would say I traveled up No. 52 150 feet or more. My motorcycle was equipped with electrical turning devices. Signal devices. I gave a turn signal a distance of 100 feet. This was after I proceeded back north. I gave a turn signal. I gave a left turn signal. I'd say that

Clark v. Moore

after I entered No. 52 headed north I had traveled about 50 feet when I gave the signal. I did make a left turn. I couldn't tell the distance that the car was from my motorcycle at the time I first noticed the approaching vehicle in my rear view mirror, but I could see it plain. I don't have an opinion as to how fast the car was traveling at the time I first noticed it. I observed it again before I made my turn. Well, it was getting close then. I don't have an opinion as to how close it was to my motorcycle when I made the turn. I don't. At the time I did observe it last in my rear view mirror it was close but I couldn't tell the distance.

When I turned I didn't see the vehicle any more. As I turned I didn't see it any more but she was there when I turned. That's right. I had observed it just prior to my turning. There was a collision between my motorcycle and this approaching vehicle that was being driven by Mrs. Moore. It occurred on the left side of the road. That was the southbound lane of traffic. There was a center line marking in the road. I was on the southbound lane of traffic. That was at the point of collision. The point of the impact on my motorcycle was on the left rear end. My motorcycle was struck on the left rear end. Part of my body was hit in the accident. It was my left leg. I heard a sound, a horn, from the approaching vehicle as I made my turn. Just as I turned. That's right. Just as I turned I heard a horn. I heard a horn and slammed about the same time. I was injured in that collision. I was taken to the hospital. . . . I had a broken leg."

Plaintiff further testified that he never told defendant at the scene of the wreck that the collision was his fault. The two other cyclists, who witnessed the wreck from their vantage point several hundred feet away, testified and corroborated plaintiff's version of the mishap.

Defendant testified that:

"As we rounded a curve in the highway we saw motorcycles parked over on the shoulder on the road. There were two of them. At that time as I rounded the curve I was doing approximately 55. I did see another motorcycle on the highway ahead of me. It was quite some distance ahead of me going north in the same direction as I was.

Well, I immediately broke my speed and drove with caution behind him for quite some time. I broke my speed, I slowed down and drove behind him for awhile to see if he was going to make a turn or anything. Well, I drove with caution and watched his actions to see what, if anything, he was going to do. He was driving very slow looking down toward the right shoulder and he did that for quite some time without looking behind, so I thought I'd pass and I blew my horn, pulled over to my left in the left lane passing going north and just as I got against him he pulled toward me. I blew my horn again but it was too late by that time and we collided. He hit my right front fender. As to how I blew my horn when I first blew it, I blew it and stopped, I didn't just stomp on it, mash on it real hard and hold it, I blew long enough just to give him a signal and then I let off because I thought he knew I was passing.

When I got against him, I saw him pulling over into me and I blew it again, but didn't have time to hold it that time because I was too busy trying to keep from colliding with him. I was in my left lane going north when he collided against me. At that time I couldn't have been going more than 35. My right front fender came in contact with the motorcycle."

Defendant also recalled that when she approached the injured plaintiff he told her that " ' . . . it was my [*i.e.* plaintiff's] fault because I was looking for something.' " Passengers in defendant's car testified and corroborated the defendant's testimony.

Heard without a jury, the trial court in pertinent part found that:

"On April 4, 1971, at approximately 2:00 p.m., the defendant was driving her automobile northward on U.S. Highway #52 at a speed of 50 to 55 miles per hour. She passed the two parked motorcycles and came up behind the motorcycle which was being operated by the plaintiff in a northerly direction on the highway. She then reduced the speed of her car and followed said motorcycle for approximately 150 feet. With no traffic approaching from the opposite direction, the defendant sounded her horn, crossed the centerline of the highway to her left, and attempted to pass the motorcycle which was then being operated by the plaintiff to his right of the center of the highway. While

Clark v. Moore

the defendant was in said act of passing, the plaintiff turned his motorcycle to his left across the center of the highway and collided with the right front bumper and fender of the defendant's automobile, and in said collision the plaintiff received serious personal injuries."

Based on the foregoing facts, the trial court concluded as a matter of law that "[t]he defendant complied with all legal requirements in attempting to pass the motorcycle operated by the plaintiff . . . [and committed] no actionable negligence. . . . " From judgment for the defendant, plaintiff appealed.

*Coble, Morton, Grigg & Odom, by Robert W. Odom, for plaintiff appellant.*

*Brown, Brown & Brown, by Richard L. Brown, Jr., for defendant appellee.*

MORRIS, Judge.

Plaintiff contends that the trial court erred in finding as a fact and concluding as a matter of law that there was no actionable negligence on defendant's part and that defendant complied with all legal requirements in attempting to pass. We find no merit in plaintiff appellant's contention.

"The court's findings of fact are conclusive if supported by any competent evidence, and judgment supported by such findings will be affirmed, even though there is evidence to the contrary. . . . Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts." *Trotter v. Hewitt*, 19 N.C. App. 253, 254, 198 S.E. 2d 465 (1973), cert. denied 284 N.C. 124 (1973).

We have carefully reviewed the evidence in this case and " . . . find that the trial court's findings of fact are supported by competent evidence and that the conclusions of law in the judgment are supported by the findings of fact." *Id.* at 254.

Affirmed.

Judges PARKER and MARTIN concur.